**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone:  (310)-279-5269
Facsimile:  (310)-300-0267
E-mail:     blake@lawbl.com

-and-

DAREN M. SCHLECTER, SBN 259537
**LAW OFFICE OF DAREN M. SCHLECTER, APC**
1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone:  (310)-553-5747

Attorneys For Plaintiffs
CHUANJIE YANG, OLLIE LAN, AND
ALL THOSE SIMILARLY SITUATED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHUANJIE YANG, an individual; OLLIE LAN, an individual; and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARKET AMERICA, INC., a North Carolina Corporation; MARKET AMERICA WORLDWIDE, INC., a North Carolina Corporation; JAMES HOWARD RIDINGER, an individual; LOREN RIDINGER, an individual; MARC ASHLEY, an individual; and DOES 1-100;<br><br>Defendants. | Case No. _____<br><br><br>**ORIGINAL COMPLAINT – CLASS ACTION**<br><br><br>**[DEMAND FOR JURY TRIAL]** |

I.    **INTRODUCTION TO THE CASE**

1.    Market America, Inc. ("MarketAmerica") and their cohorts represented to plaintiffs Chuanjie Yang and Ollie Lan (collectively, the "Plaintiffs") that Market America provides a business opportunity "unlike any seen in history before" and that Plaintiffs could formulate their growth for future financial success through MarketAmerica.  Plaintiffs and hundreds of thousands, have joined MarketAmerica and have become distributors.

2.    MarketAmerica touts that by following a "two-year blueprint," any person can formulate, grow, and shape his or her growth for financial success. According to MarketAmerica, the only way to fail under MarketAmerica's business model is to quit.  Meanwhile, MarketAmerica and its confederate conspirators now assert a business valuation of $7.3 billion that they have made off the backs of millions of people in their pyramid.

3.    MarketAmerica targets Chinese-American immigrants who do not have regularly available legal channels to vindicate their legal rights, and in hope of selling "wonder" products to their relatives in China.  Further, these connections help MarketAmerica connect to billions of potential victims thousands of miles away.

4.    Plaintiffs did not make money as promised. As with the case of hundreds of thousands of MarketAmerica distributors before and after them, the Plaintiffs failed.  Plaintiffs and those similarly situated, failed even though they were committed and put in the time and effort. They failed because they were doomed from the start by a MarketAmerica marketing plan that systematically rewards recruiting Distributors over the sale of products.

5.    Over 90% of MarketAmerica Distributors average net losses.  No persons, except Individual Defendants and secretly placed individuals into the "representative" tiers of the company, makes any money.

1    6.    Defendants run an illegal pyramid scheme. Defendants take money in
2   return for the right to sell products that they do not even manufacture, and reward
3   for recruiting other participants into the pyramid.

4    7.    Accordingly, Plaintiffs, for themselves, all others similarly situated,
5   and the general public, allege:

6   II.   **TYPE OF ACTION**

7    8.    Plaintiffs sue for themselves and for all persons who were
8   MarketAmerica participants from 2010 until the present under California's Endless
9   Chain Scheme Law (California's Penal Code § 327 and California Civil Code §
10  1689.2), California's Unfair Competition Law (Business and Professions Code
11  §17200 et seq.), False Advertising Law (Business and Professions Code §17500),
12  and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*.
13  against all defendants for the operation and promotion of an inherently fraudulent
14  endless chain scheme.

15  III.  **PARTIES**

16   9.    Plaintiff Chuanjie Yang ("Yang"), is and at all relevant times, has done
17  business in the County of Los Angeles.

18   10.   Plaintiff Ollie Lan, is and at all relevant times, had done business in the
19  County of Los Angeles.

20   11.   Market America, Inc. is a North Carolina Corporation
21  ("MarketAmerica") that operates and manages the pyramid scheme in California.

22   12.   Market America Worldwide, Inc. is a North Carolina Corporation
23  ("Marketing") that also operates and manages the pyramid scheme in California.

24   13.   Defendant James Howard Ridinger aka JR Ridinger ("JR") is a natural
25  person.  JR is the founder of MarketAmerica and Marketing, Chairman, and CEO.
26  He is at or near the top of the pyramid operated and promoted by the Defendants,
27  and he actively participates in, promotes, and profits from MarketAmerica's
28  pyramid scheme.

14.     Defendant Loren Ridinger ("Loren") is a senior executive Vice President for MarketAmerica.  She is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

15.     Defendant Marc Ashley ("Ashley") is the son of Loren and the President and Chief Operating Office of MarketAmerica. He is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

16.     JR, Loren, and Ashley are referred to hereinafter, as the "Individual Defendants."

III.    **<u>JURISDICTION AND VENUE</u>**

17.     Jurisdiction is conferred upon this Court because Defendants do business in this judicial district, they hold themselves out and market to this jurisdiction, and they actually conduct significant transactions in this jurisdiction.  Under Plaintiff's California state law claims, more than 75% of those affected in the class (and perhaps more persons) are residents of the State of California.   Supplemental jurisdiction exists over the RICO causes of action and Federal Securities claim, pled in the alternative.

18.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction, in this District.

19.     Defendant MarketAmerica is subject to the jurisdiction of this Court. MarketAmerica has been engaged in continuous and systematic business in California.  In fact, many of MarketAmerica's representative business activities originate from California.

20.     MarketAmerica has committed tortious acts in this State.

21.     Each of the Defendants named herein acted as a co-conspirator, single enterprise, joint venture, co-conspirator, or alter ego of, or for, the other Defendants with respect to the acts, omissions, violations, representations, and common course of conduct alleged herein, and ratified said conduct, aided and abetted, or is other liable.  Defendants have agreements with each other, and other unnamed Director co-conspirators and have reached agreements to market and promote the MarketAmerica pyramid as alleged herein.

22.     Defendants, along with unnamed Director co-conspirators, were part of the leadership team that participated with MarketAmerica, and made decisions regarding: products, services, marketing strategy, compensation plans (both public and secret), incentives, contests and other matters.  In addition, Defendants and unnamed co-conspirators were directly and actively involved in decisions to develop and amend the compensation plans.

23.     Plaintiffs are presently unaware of the true identities and capacities of fictitiously named Defendants designated as DOES 1 through 10, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, each and every DOE defendant is in some manner responsible for the acts and conduct of the other Defendants herein, and each DOE was, and is, responsible for the injuries, damages, and harm incurred by Plaintiffs. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all of the named defendants and those unknown parties sued under fictitious names.

24.     Plaintiffs are informed and believe, and thereon allege that, at all times relevant hereto, all of the defendants together were members of a single association, with each member exercising control over the operations of the association.  Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to the above-referenced unincorporated association as a jural entity and each defendant herein is sued in its additional capacity as an active and

participating member thereof. Based upon the allegations set forth in this Complaint, fairness requires the association of defendants to be recognized as a legal entity, as the association has violated Plaintiff and Class Members' legal rights.

25.    Plaintiffs are further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

26.    Plaintiffs are informed and believe and thereon allege that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this Complaint.

27.    The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiffs and Class Members (as hereinafter defined) of their constitutionally protected rights to property, and of their rights under other laws as set forth herein. Each of the defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiffs and Class Members by the defendants as a consequence.

IV.    **FACTS**

    A.    **MarketAmerica Operates A Pyramid Scheme**

28.    MarketAmerica was founded in 1992 by a former Amway Distributor, and co-defendant, JR Ridinger.  MarketAmerica has very little costs, nor production requirements because it does not directly manufacture its own products.  Instead, MarketAmerica offers products from third party manufacturers, but requires distributors of MarketAmerica to pay monthly fees just for the opportunity to sell these third-party products, the touchstone of a pyramid scheme.

29.    To sign up as a Market America distributor, an enrollee must pay a start-up fee of $399.00 (which was even greater prior to 2013), and further, a distributor must pay MarketAmerica a monthly fee of $129.00, per month.  Further,

1    an enrollee must spend between $130-$300 on products offered on Shop.com, per

2    month to allegedly maintain qualifications as an enrollee.  MarketAmerica also

3    requires distributors to attend trainings, events and seminars, which cost between

4    $20 and $200.

5        30.     Ridinger describes himself as a "secular economic evangelist."  JR

6    represents that to be successful with MarketAmerica, one must build two sales

7    distribution teams, bring in preferred customers, sell business, and sell tickets for

8    national events, and training seminars. Further representations are made that sales

9    requires recruiting people to build distribution teams.

10        31.     MarketAmerica pays to an infinite level deep with the downline.  In

11   other words, for every dollar earned by a distributor for start up-fees, all those lines

12   above the person on the pyramid receive revenues from the person being enrolled.

13        32.     Rewards paid in the form of cash bonuses, where primarily earned for

14   recruitment, as opposed to merchandise sales to consumers, constitute a fraudulent

15   business model.  *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878 (9th Cir. 2014).

16        B.     **How MarketAmerica Perpetuates Its Pyramid Scheme**

17        33.     To "build a serious business, it is based on bringing two likeminded

18   people-one on your right side, one on your left side."  *See*

19   https://www.youtube.com/watch?v=TMSQnqK4l8A, (last visited May 27, 2017) (at

20   6:40).

21        34.     As each lower level is recruited, points and commissions are rewarded

22   to an infinite level deep, i.e. to each level of the pyramid scheme.  According to

23   MarketAmerica, "people lead to more people."  (*See* Figure No. 1).

24                  [Complaint continued on next page]

25

26

27

28

1

FIGURE NO. 1



35.     Every dollar made by MarketAmerica (*i.e.* throughout the entire pyramid) accrues to the benefit of those at the top of the pyramid.

36.     Two commission checks are to be paid – money from BV (Business volume) Products that MarketAmerica affixes its logo to) and IBV (Incentive Business Volume) (non-MarketAmerica Products).

37.     After a distributor cycles (creates one full cycle of sales above as reflected in Figure No. 1), a distributor can "re-enter" the pyramid as a downline in both pyramids.  Recyling is depicted in the black squares below as follows:

FIGURE NO. 2

38.     The purpose of "re-entry" is a feeble attempt to detract from the appearance of a perpetual pyramid scheme and to squeeze out those in the lower levels of the pyramid from bonuses, points, and commissions.  Re-entries in MarketAmerica are represented by those in MarketAmerica to be "unlimited."

39.     Finally, if one becomes a "Master Unfranchise Owner" he or she can earn even more money (*see* Figure No. 3 below).  In short, enrollees are asked to pay a large upfront fee for the speculative chance to earn another source of income.  Those on the top of the pyramid will give up some of the ill-gotten profits *if* a Distributor signs up three times.  According to MarketAmerica, through this process, a distributor can earn "$561,600." Through MarketAmerica, a distributor can have at most, four front lines.  In actuality, no true MarketAmerica distributor earns $561,000, only those at the helm of the scheme, and more than 90% all enrollees earn nothing.

FIGURE NO. 3



40.     MarketAmerica claims to its victims, "don't overthink it.  This is a proven system."  According to representations and advertisements, MarketAmerica has taken "all the risk away."

1  FIGURE NO. 4



9    41.    MarketAmerica represents that this business opportunity can be "willed or transferable" to an distributor's children, you "get to dream big," and get to "make a difference in the world" by being a part of this business.

C.    **Members Receive Benefits Only Through The Performance Of Those Downline To Them**

42.    As MarketAmerica's sale presentation states, income is made only from the recruit of additional sales representatives because Market America has to pay wholesale prices to those companies that actually manufacture its products.

43.    Some of the products offered by MarketAmerica are unhealthy and toxic, and after Plaintiff Lan's mother took MarketAmerica's products, she suffered health issues.  MarketAmerica has been sued under Proposition 65 in a class action because certain of its products allegedly contained lead.  *Environmental Research Center v. Market America, Inc.*, 30-2013-00650458 (Orange Ct. Sup. Ct, May 20, 2012).

D.    **Market America Encourages Inventory Loading**

44.    MarketAmerica encourages Distributors to recruit and to inventory load through its wholesale commissions.

45.    The prospect of wholesale commissions encourages recruiting: the more recruits a Distributor has, the more potential there is for a wholesale commission. The prospect of wholesale commissions also encourages Distributors

1   to purchase product they do not otherwise need or want to increase their points so

2   that they can be eligible for greater discounts and thus, greater wholesale

3   commissions.

4         46.    There are very few retail purchases made at Distributors' sites.  These

5   are MarketAmerica webpages that allow retail customers to order directly from

6   MarketAmerica and attribute the purchase to a particular distributor (much like a

7   customer informing the cashier at a department store which clerk helped him find

8   the sweater he is purchasing).  The customer does not receive a discount for

9   purchasing through a particular Distributor's Microsite, so the customer has little

10   incentive to order through the Microsite.  As for the Distributors, they will want to

11   make retail sales directly to retail customers so they can offload product that they

12   have already purchased from MarketAmerica.  In addition, for reasons described

13   herein, few profitable retail sales are made at all, via the sites or otherwise.  Thus,

14   retail sales through a Distributor's site is not a reliable source of points.

15         47.    The only reliable source of points for the majorityof Distributors is

16   their own purchases.  Purchases for normal consumption will be insufficient to meet

17   the thresholds required to qualify for bigger discounts.  Thus, MarketAmerica's

18   wholesale commissions financially incentivize the Distributors to inventory load to

19   make purchases; not for the purpose of fulfilling retail demand, and not to satisfy

20   their normal desire for nutritional supplements and health products, but rather so

21   that they can increase their points, qualify for greater discounts, and qualify for

22   wholesale commissions.  Moreover, as discussed above, every form of

23   compensation paid by MarketAmerica incentivizes recruiting - bringing more

24   Distributors into the scheme. In fact, Wholesale Commissions, Overrides, and

25   Leadership Bonuses are payable only if a Distributor has recruited new Distributors.

26   Thus, just like a classic pyramid scheme, the MarketAmerica scheme requires

27   participants to put money into the scheme and rewards participants who bring in

28   new participants.

**E.** **Distributors Are Unable To Sell MarketAmerica Products For A Profit**

48.     Distributors are unable to consistently sell MarketAmerica products for a profit for many reasons. First, the products are overpriced.  Interchangeable products are available online or in brick-and-mortar stores for amounts far less than MarketAmerica's suggested retail price, and even lower than its wholesale prices.

49.     Second, MarketAmerica's products themselves are available online for the wholesale price or less.  That these products are sold at or below the Advisor price makes it difficult for Distributors to sell the products for a profit. MarketAmerica may have taken action to reduce resales, but the fact remains that MarketAmerica products are available below the discount prices.  Moreover, many of these sales are likely made by current or former Distributors desperately trying to offload excess product at whatever price they can get, which further supports the propositions that Distributors Inventory Load and that the MarketAmerica products are overpriced.

50.     Third, MarketAmerica prohibits Distributors from selling the products in the only forum for a where Distributors could reasonably expect to sell enough product to make a meaningful profit: the internet. Some examples of these prohibited websites include, but are not limited to: eBay, Amazon or Craigslist. In addition, MarketAmerica forbids its Distributors from selling MarketAmerica products at almost all brick-and-mortar establishments. MarketAmerica seeks to limit the Distributors to one-on-one situations in private locations (such as the Distributor's or a friend's home), but achieving significant, profitable retail sales by this method is extremely difficult.

51.     Plaintiffs do not contend that Distributors make no retail sales at all. But Plaintiffs do allege that relatively little of the revenues received by Distributors—including both money paid them by MarketAmerica and proceeds from retail sales—comes from retail sales, and the vast majority comes from

Distributors' payments to MarketAmerica.  Thus, the Distributors are primarily feeding off each other.

52.    MarketAmerica also makes false and/or inadequate income disclosures in that in many instances, it does not disclose income of those who are distributors, or provides statements of income that are false, and/or misleading, that affirmatively represent a profitable business opportunity, when there is no profit to be made, and nearly all participants in fact, lose money.

53.    Because MarketAmerica pays the executives at the top of the pyramid exorbitant incomes and because little non-Distributor money comes into the scheme to pay Distributors, the Distributors at the bottom of the pyramid must lose money. These losses are borne out by MarketAmerica's own financial disclosures and the experiences of the Plaintiffs and multiple other Distributors.

**F.    The Individual Defendants and Market America Promote the Pyramid Scheme**

54.    The Individual Defendants are persons at the top of MarketAmerica's pyramid.  All of the Individual Defendants achieved ranks of top executive.  They are in the top 1% of Distributors who make the most lucrative bonuses.  They actively participate in the MarketAmerica pyramid scheme, and they profit from the compensation plan at the expense of the vast majority of Distributors.

55.    MarketAmerica and the Individual Defendants promote the pyramid scheme and make misleading claims of financial success.

56.    In coordination with MarketAmerica, the Individual Defendants have flooded the internet with promotional materials designed to lure in new Distributors. MarketAmerica and Individual Defendants promote the scheme as a lawful program that, with sufficient hard work, virtually guarantees financial success. MarketAmerica and the Individual Defendants promote Market America as a reliable source of significant income.

57.    To sell the financial- success promise, MarketAmerica and the Individual Defendants flaunt the wealth of the highest-ranked Distributors and those few insiders at the top of the pyramid, as examples of the riches that await new participants, if only they will work hard enough (i.e., tirelessly recruit new Distributors).

58.    All of the Individual Defendants have produced videos and made statements via the internet knowingly promoting MarketAmerica's pyramid scheme and touting the financial rewards supposedly available to participants.  Each of these statements furthered the pyramid scheme by encouraging persons to become Distributors and by encouraging Distributors to remain Distributors and pursue the MarketAmerica business opportunity.

59.    The similarity of the statements made by the Individual Defendants indicates a collusive effort to promote the MarketAmerica scheme. The following paragraphs set forth just a small subset of publicly broadcast statements made by the Individual Defendants to promote the MarketAmerica "business opportunity."

60.    Defendant JR Ridinger ("JR").  Defendant JR is one of the most prolific MarketAmerica promoters.  Scores of videos on YouTube and other public internet platforms feature JR promoting, touting, and explaining the MarketAmerica business opportunity.

FIG. NO. 5



61.    As seen above, JR tries to make his introduction to victims appear like a rock and roll concert with visual spectacles including pyrotechnics, laser lights, rock music, and jumbo screens.  https://www.youtube.com/watch?v=pZn5xjKpDns.

62.    JR represents: "[h]ow do we build a business, we have fun and we hiss a lot." "We hiss in a lot of pots." "For those that understand no explanation is necessary." "We can sell anything."

63.    Further, JR represents "[i]t follows wherever people connect to maximize to infinity." "One person doesn't do it, it creates swiss cheese below.  In reality if one person doesn't do it, you have to get three in under them, and three in under them." "It always maximizes profit." "We are executive directors in one year.  Some Chinese have done it faster.  [Except unlike them] we buy tickets."

FIG NO. 6



FIG. NO. 7



64.   <u>Defendant Loren Ridinger ("Loren")</u>.  Loren represents: "[w]e build people with teams."  "When you buy, you can buy from yourself."  "If you can't buy from yourself…[convert spending to earning] why are you here?"  Loren further represents that distributors, "[n]eed to buy a ticket here [for the next event MarketAmerica is having]."  "If you don't buy it here, *you are not coming [to the next event]*."  Loren demands that distributors "build from event to event," "build an empire, people power."  Among other things, Loren commands to her victims that through the MarketAmerica business opportunity, one can "[b]e a lion for a day rather than being a slave for thousands of years."  "We build people power," and later she claims MarketAmerica requires an - "empire of people."

FIGURE NO. 8



65.   <u>Defendant Marc Ashley</u>.  Defendant Marc Ashley ("Ashley") is the COO of MarketAmerica and regularly promotes the recruiting scheme of MarketAmerica at events by discussing the recruitment scam of MarketAmerica.

FIGURE NO. 9



FIGURE NO. 10



FIGURE NO. 11



66.    Carl Eklund, an executive of MarketAmerica confirms in various seminar materials that the MarketAmeria business has "not changed" because of the shopping annuity, the shopping annuity just makes the business easier.

G.    **Plaintiffs Are Victims Of The Pyramid Scheme**

67.    Yang became an MarketAmerica distributor in 2010 through 2016 by making purchases and buying the starter pack.  Plaintiff paid the monthly membership for years, attended multiple seminars, and in total paid MarketAmerica approximately $35,000 towards this opportunity.  Plaintiff Yang was deceived by MarketAmerica's misleading opportunity believing, the opportunity was a legitimate way to earn money (even though that representation by Market and the

1  Individual Defendants was false), and Plaintiff Yang did in fact lose money as a

2  result of Defendants' unfair, unlawful, and fraudulent business practice.

3       68.    Ollie Lan, is and at all relevant times, had done business in the County

4  of Los Angeles.  Lan became a MarketAmerica distributor in December of 2015

5  through present.  Lan paid monthly distributor fees for three months.  Plaintiff Lan

6  was deceived by MarketAmerica's misleading opportunity believing the opportunity

7  was a legitimate way to earn money (even though that representation was false), and

8  Plaintiff Lan did in fact lose money as a result of Defendants' unfair, unlawful, and

9  fraudulent business practice.

10       69.    Plaintiffs Yang and Lan were unable to make many retail sales, and they

11  lost money in the MarketAmerica scheme even considering retail sales.

12       **H.**    **Independent Distributor Application And Agreement**

13       70.    At some times during MarketAmerica's history, it has requested various

14  class members to sign a one page document labeled, "Independent Distributor

15  Application and Agreement" (the "Agreement").

16  FIGURE NO. 12



71.    The signature line of the Agreement, only requires a MarketAmerica

distributor to "AGREE TO THE **TERMS** SET FORTH IN THIS AGREEMENT."

(emphasis added). None of the "terms" in the Agreement provide for arbitration.

Nowhere on the form, does MarketAmerica ask class members to assent or sign that

they agree to any *conditions*.  No term of the Agreement provides for arbitration, so

no class member is bound by arbitration.

72.    At the bottom of the form and *below* the signature box (See Figure No.

12 above), next to a box labeled "INTERNAL USE ONLY," the Agreement states

"SEE REVERSE SIDE FOR TERMS **AND CONDITIONS** OF THIS

AGREEMENT." (emphasis added).

73.    The "conditions" on the reverse side include an arbitration provision,

which provides as follows:


> 29. Arbitration. Any controversy or claim arising out of or relating to this
> Agreement, or the breach thereof, shall ultimately be settled by arbitration
> administered by the American Arbitration Association in accordance with its
> Commercial Arbitration Rules and judgment on the award rendered by the
> arbitrators may be entered in a court of competent jurisdiction. You understand
> that this arbitration provision means you are giving up the right to have any
> dispute you have regarding this Agreement heard by a jury and determined in a
> court of law. The arbitration shall be heard by one arbitrator, and it shall take
> place in Greensboro, North Carolina. Either party may seek emergency or
> provisional relief in the General Court of Justice, Guilford County, North
> Carolina, prior to invoking the arbitration remedy.


74.    The arbitration provision is unenforceable because no class members

were required to assent to the arbitration conditions by the terms of the Agreement

itself, and the signature line block confirms only the "terms" of the Agreement need

be assented to.  In the alternative, this is highly misleading.

75.    In the alternative, the arbitration provision is unconscionable because

*inter alia*, it permits MarketAmerica the unilateral right to modify the conditions of

1   the arbitration policy, the rules of Commercial Arbitration for AAA do not provide

2   for prevailing party fees and class members would have to pay the cost and fees of

3   arbitration despite their entitlement to costs of suit and fees should they be the

4   prevailing party in this action, the pre-litigation requirements of MarketAmerica prior

5   to bringing action are unconscionable, and for other reasons to be asserted to the

6   extent motion practice is initiated.

7         76.    In the alternative, the arbitration provision is unenforceable as a matter

8   of law and as a matter of fact on other grounds.

9         77.    In the alternative, the arbitration provision is unenforceable related to the

10   injunctive relief requested in this Complaint, based on recent California Supreme

11   Court authority.

12   V.    **CLASS ACTION ALLEGATIONS**

13         77.    Plaintiffs seek to represent a nationwide class defined as follows:

14         78.    Plaintiffs bring this action as a class action under Federal Rule of Civil

15   Procedure 23.

16         79.    Plaintiffs seek to certify a class pursuant to Fed. R. Civ. Proc. 23(a),

17   23(b), 23(c)(4), and 23(c)(5), if necessary.

18         80.    Plaintiffs seek relief on behalf of themselves and the following class:

19   persons who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any

20   other fees imposed by Market America, and/or purchased products from

21   MarketAmerica between March 9, 2010, to the present date, who lost money from

22   their participation in the MarketAmerica scheme.

23         81.    Subject to confirmation, clarification and/or modification based on

24   discovery to be conducted in this action, Plaintiffs also seek to represent a sub-class

25   in California, defined as follows: persons residing in California who paid start-up

26   fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Market

27   America, and/or purchased products from MarketAmerica between March 9, 2010, to

28

1   the present date, who lost money from their participation in the MarketAmerica

2   scheme.

3          82.    Subject to confirmation, clarification and/or modification based on

4   discovery to be conducted in this action, Plaintiff also seeks to represent a sub-class

5   of all worldwide participants of MarketAmerica, defined as follows: persons

6   residing anywhere in the World who paid start-up fees, monthly fees, annual fees,

7   seminar ticket fees, any other fees imposed by Market America, and/or purchased

8   products from MarketAmerica between March 9, 2010, to the present date, who lost

9   money from their participation in the MarketAmerica scheme.

10          83.    Pursuant to the previous paragraph of this complaint, the damage to any

11  person living anywhere else other than the United States involved a domestic injury

12  to business or property because all contracts of independent business owners were

13  negotiated, executed, and stored on a server in the United States owned by

14  MarketAmerica, and are available on the worldwide web, involved a significant

15  connection to domestic commerce in that the labeling, products, and other parts of

16  the manufacturing and sales and marketing process were conducted from the United

17  States, and for other reasons to be provided according to proof, and after the

18  opportunity for discovery.

19          84.    Excluded from the class are the Defendants, family members, this

20  Court, and any "Director" of MarketAmerica.

21          85.    Plaintiffs seek to pursue a private attorney general action for injunctive

22  relief for themselves and all members of the class, and they satisfy the standing and

23  class action requirements.

24          86.    While the exact number of members in the Class and Subclasses are

25  unknown to Plaintiffs at this time, and can only be determined by appropriate

26  discovery, membership in the class and subclasses is ascertainable based upon the

27  records maintained by Defendant.  It is estimated that the members of the Class are

28  greater than 250,000, nationwide.

ORIGINAL COMPLAINT – CLASS ACTION

87.    Therefore, the Class and Subclasses are so numerous that individual joinder of all Class and Subclass members is impracticable.

88.    There are questions of law and/or fact common to the class and subclasses, including but not limited to: (a) Whether the arbitration policy is enforceable; (b) Whether MarketAmerica is operating an endless chain; (c) Whether Distributors paid money to MarketAmerica for (1) the right to sell a product and (2) the right to receive, in return for recruiting others, rewards which were unrelated to the sale of the product to retail consumers; (d) Whether MarketAmerica's rules apply to Section 327 claims; (e) If the MarketAmerica rules do apply, are MarketAmerica's rules effective; (f) If the MarketAmerica rules do apply, and MarketAmerica's rules are effective, did MarketAmerica enforce those rules; (g) Whether MarketAmerica or the Individual Defendants omitted to inform the Plaintiffs and the plaintiff class that they were entering into an illegal scheme where an overwhelming number of participants lose money; (h) Whether MarketAmerica's statements of compensation during the Class Period were deceptive and misleading; (i) Whether MarketAmerica's conduct constitutes an unlawful, unfair and/or deceptive trade practice under California state law; (j) Whether MarketAmerica's conduct constitutes unfair competition under California state law; and (k) Whether MarketAmerica's conduct constitutes false advertising under California state law.

89.    These and other questions of law and/or fact are common to the class and subclasses and predominate over any question affecting only individual class members.

90.    Plaintiffs' claims are typical of the claims of the class and subclasses in that Plaintiffs were Distributors for Defendant MarketAmerica and lost money because of the illegal scheme.

91.    Plaintiffs will fairly and adequately represent the interests of the class and subclasses. Plaintiffs' claims are typical of those of the class and subclasses. Plaintiffs' interests are fully aligned with those of the class and subclasses. And

1   Plaintiffs have retained counsel experienced and skilled in complex class action

2   litigation.

3         92.    Class action treatment is superior to the alternatives for the fair and

4   efficient adjudication of the controversy alleged, because such treatment will allow

5   many similarly-situated persons to pursue their common claims in a single forum

6   simultaneously, efficiently and without unnecessary duplication of evidence, effort,

7   and expense that numerous individual actions would engender.

8         93.    Plaintiffs know of no difficulty likely to be encountered in the

9   management that would preclude its maintenance as a class action.

10  VI.   **CLAIMS FOR RELIEF**

11  **FIRST CLAIM FOR RELIEF**

12  **Judgment Declaring the Arbitration Provision Unenforceable**

13  (Plaintiffs on Behalf of Themselves And Those Similarly Situated, Against All

14  Defendants, including DOES 1 through 10)

15        94.    Plaintiffs reallege all allegations as if fully set forth herein, and

16  incorporate previous allegations by reference.

17        95.    Because the MarketAmerica Agreement itself does not require any

18  class member to assent, by signature, to the "conditions," the arbitration provision is

19  unenforceable related to the claims in this action.

20        96.    MarketAmerica's "conditions" buried at the bottom of the form, below

21  the signature block and next to a box "for internal use only" include an arbitration

22  provision.  The conditions grant MarketAmerica the power to unilaterally modify

23  the terms of the Agreement, including the arbitration provision, at any time and

24  without prior notice, thereby rendering the arbitration  provision illusory, lacking

25  consideration, and therefore unenforceable.

26        97.    The arbitration provision is alternatively, unenforceable as a matter of

27  fact, and law.

28

98.     For these reasons, and those legal reasons to be stated in connection with any motion practice initiated by the Defendants, the Court should declare that the arbitration provision is illusory, lacks consideration, and unenforceable, and that the Plaintiffs' claims and the Classes' claims are properly before this Court.

## SECOND CLAIM FOR RELIEF

**ENDLESS CHAIN SCHEME; California Penal Code § 327 and Section 1689.2 of the California Civil Code**

(Plaintiffs on behalf of themselves and the Class, Against All Defendants including DOES 1 through 10)

97.     Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

98.     Section 1689.2 of the California Civil Code provides: "[a] participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme."

99.     The Defendants are operating an endless chain scheme under Section 327 of the Penal Code because they have contrived, prepared, set up, and proposed an endless chain.

100.     The MarketAmerica operations constitute a scheme for the disposal or distribution of property whereby class members pay a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant.

101.     Independently, the MarketAmerica operations constitute an endless chain because members pay an initial fee and then sign up for indefinite monthly automatic deductions to maintain their memberships, only to have a membership terminated if he fails to pay.

102.   Independently, the MarketAmerica operations constitute an endless chain because defendants tell victims they earn commissions by recruiting other people to buy memberships and the members, were in turn, instructed to recruit more members.

103.   Independently, the MarketAmerica operations constitute an endless chain because Defendants' commissions, income, lottery gifts like vehicles, and free products were based on a current member's sales of memberships to new members whether any of these members actually used their MarketAmerica membership to sell any products.

104.   Plaintiffs and the class have suffered an injury in fact and have lost money or property because of MarketAmerica and the Individual Defendants'operation of an endless chain, business acts, omissions, and practices.

105.   Plaintiffs and the class are entitled to: (a) rescind the contracts/agreements upon which the scheme is based and recover all consideration paid under the scheme, less any amounts paid or consideration provided to the participant under the scheme; (b) restitution, compensatory and consequential damages (where not inconsistent with their request for rescission or restitution); and (c) attorneys' fees, costs, pre and post-judgment interest.

## THIRD CLAIM FOR RELIEF

**Unfair and Deceptive Practices Claims Under Cal. Bus, & Prof. Code § 17200, *et seq*.**

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 10)

106.   Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

107.   All claims brought under this Third Cause of action that refer or relate to the unlawful, fraudulent or unfair "endless chain" of the Defendants are brought on behalf of Plaintiffs and the Class.

108.   All claims brought under this Third Cause of Action that refer or relate to the unlawful, fraudulent or unfair the statements, the touted MarketAmerica "business opportunity" are brought on behalf of Plaintiffs and the Class.

109.   MarketAmerica has engaged in constant and continuous unlawful, fraudulent and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, *et seq*. The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized and continues to victimize thousands of consumers for which Plaintiffs' seek to enjoin from further operation.  The MarketAmerica Sales and Marketing Plan Is Unlawful.

110.   Under California Business and Professions Code § 17200, an "unlawful" business practice is one that violates California law.

111.   MarketAmerica's business practices are unlawful under § 17200 because they constitute an illegal "endless chain" as defined under, and prohibited by, California Penal Code § 327.

112.   MarketAmerica utilizes its illegal "endless chain" with the intent, directly or indirectly, to dispose of property in MarketAmerica's products and to convince Distributors to recruit others to do the same.

113.   MarketAmerica's business practices are unlawful pursuant to §17200 because they violate §17500 *et seq.*, as alleged in the Third Cause of Action.

114.   Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

115.   MarketAmerica's business practices are fraudulent in two separately actionable ways: (1) MarketAmerica's business constitutes an illegal and deceptive "endless chain;" (2) the touted, yet non-existent, MarketAmerica "business opportunity" is for everyone, including but not limited to MarketAmerica's massive advertising campaign and the misleading statements of compensation.

116.   First, as detailed herein, Defendants promoted participation in the MarketAmerica endless chain, which has a compensation program based on payments to participants for the purchase of product by participants, not the retail sale of products or services.

117.   MarketAmerica has made numerous misleading representations about the business opportunity of MarketAmerica and the income that a recruit or a distributor can realize by becoming a distributor and participating in the scheme.

118.   MarketAmerica knew, or should have known, that the representations about the business opportunity of MarketAmerica were misleading in nature.

119.   As a direct result of MarketAmerica' fraudulent representations and omissions regarding the MarketAmerica endless chain described herein, MarketAmerica wrongly acquired money from Plaintiff and the members of the classes.

120.   Second, MarketAmerica touted, in numerous different ways as part of a massive advertising campaign, a "business opportunity," which MarketAmerica also repeatedly and in many ways represented, among other things, as being "for everyone" and allowing "full time" or "part time" opportunities.

121.   The massive advertising campaign included among other things, the website, emails, websites, presentations by MarketAmerica, training, word of mouth among Distributors, and events.

122.   As part of this campaign and a further inducement to potential Distributors, MarketAmerica made and disseminated statements of compensation that further misled the public, among other things: (1) by using cryptic and technical terms known to MarketAmerica but not to the general public or to those exploring the claimed "business opportunity," (2) by highlighting the successful persons, i.e., those that received compensation from MarketAmerica, and the average gross compensation paid by MarketAmerica to those winners, (3) by failing to disclose the actual number of successful persons as compared to the number of Distributors who

1    received no compensation from MarketAmerica (i.e., the "losers"), and (4) by

2    downplaying and omitting the risks and costs involved in starting an MarketAmerica

3    Distributorship and succeeding in such a Distributorship.

4         123.   In reality, the touted "business opportunity" was only for a select few,

5    and those that were recruited specially.  And these numbers did not include expenses

6    incurred by distributors in the operation or promotion of their businesses, meaning

7    there were likely more net losers who made no profit at all.

8         124.   MarketAmerica knew, or should have known, that the selective

9    information presented to distributors in the compensation and its massive adverting

10   campaign during that time frame touting its purported "business opportunity" was

11   likely to mislead the public and did in fact mislead the public into believing that

12   there was a legitimate "business opportunity" in which Distributors, or a large

13   portion of them, could make money in either a full or part time capacity. In fact,

14   however, there was no such "business opportunity," except for a very select few.

15        125.   As a direct result of MarketAmerica' fraudulent representations and

16   omissions regarding the Statement and the massive adverting campaign during that

17   time frame and thereafter touting MarketAmerica's purported "business

18   opportunity" described herein, MarketAmerica wrongly acquired money from

19   Plaintiffs and the members of the classes.

20        126.   The named Plaintiffs have standing to bring these § 17200 claims under

21   the fraudulent prong, and can demonstrate actual reliance on the alleged fraudulent

22   conduct.

23        127.   For instance, Plaintiffs have been in receipt of misleading and false

24   financial statements and marketing materials/seminar papers, which promoted the

25   MarketAmerica' scheme and claimed "business opportunity" and contained material

26   false representations regarding the success Distributors could achieve through

27   MarketAmerica by purchasing products and recruiting others to do the same.

28

128.    There were other representations made to Distributors as part of the
massive advertising campaign regarding the claimed "business opportunity," on
which Plaintiff or some of the Class Members, reasonably believed the
representations they could succeed in the "business opportunity," did not return the
refund, purchased MarketAmerica products and did not immediately return them,
signed up as MarketAmerica Distributors, and attempted to and recruited others to
do the same.  These other representations include, but are not limited to the
following: (a) emails from MarketAmerica that promoted MarketAmerica and
contained material false representations regarding the success that a distributor
could achieve through MarketAmerica by purchasing products and recruiting others
to do the same; (b) websites, such as www.shop.com and marketamerica.com, which
promoted the fraudulent scheme through videos of Individual Defendants containing
material false representations regarding the "business opportunity" available to
Distributors and the wealth that a distributor could get by agreeing to become an
MarketAmerica distributor; (c) Presentations by MarketAmerica Distributors which
contained material false representations regarding the "business opportunity" and
the success that a distributor could get through MarketAmerica by purchasing
products and recruiting others to do the same; (d) Presentations by MarketAmerica,
including the presentations described in this complaint, which contained material
false representations regarding the "business opportunity" and the success that a
distributor could get through MarketAmerica by purchasing products and recruiting
others to do the same; (e) Training and events where MarketAmerica Distributors
made material false representations regarding the "business opportunity" and the
success that a distributor could get through MarketAmerica by purchasing products
and recruiting others to do the same.

129.    To the extent proof of reliance is required of Plaintiffs, MarketAmerica
and the Individual Defendants knew that Plaintiffs and the class would reasonably
rely on their representations and omissions, which would cause the Plaintiffs and the

class joining the fraudulent endless chain scheme and purchasing the products, and Plaintiffs did in fact reasonably rely upon such representations and omissions.

130.    Indeed, had Plaintiffs and the class known that MarketAmerica and its Individual Defendants were promoting an endless chain, they would not have become MarketAmerica Distributors in the first place and, if learned after becoming a distributor, they would not have purchased MarketAmerica products thereafter.

131.    Had Plaintiffs and the class known that MarketAmerica was promoting a "business opportunity" that did not exist except for a select few, they would not have become MarketAmerica Distributors in the first place and, if learned after becoming a distributor, they would not have purchased MarketAmerica products thereafter.

132.    Finally, the fraudulent acts, representations and omissions described herein were material not only to Plaintiffs and the class (as described in this complaint), but also to reasonable persons.

133.    Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

134.    For the reasons set forth herein and above, MarketAmerica's promotion and operation of an unlawful and fraudulent endless chain, and its fraudulent representations and omissions regarding its purported "business opportunity," are also unethical, oppressive, and unscrupulous in that MarketAmerica is and has been duping Plaintiff and the class out of billions, or at least hundreds of millions, of dollars.

135.    MarketAmerica's actions have few, if any, benefits. Thus, the injury caused to Plaintiff and the class easily and dramatically outweigh the benefits, if any.

1    136.    Defendants should be made to disgorge all ill-gotten gains and return to

2    Plaintiff and the class all wrongfully taken amounts.

3    137.    Finally, Defendants' unlawful, fraudulent and unfair acts and omissions

4    will not be completely and finally stopped without orders of an injunctive nature.

5    Under California Business and Professions Code section 17203, Plaintiffs and the

6    class seek a judicial order of an equitable nature against all Defendants, including,

7    but not limited to, an order declaring such practices as complained of to be unlawful,

8    fraudulent and unfair, and enjoining them from further undertaking any of the

9    unlawful, fraudulent and unfair acts or omissions described herein.

10    **FOURTH CLAIM FOR RELIEF**

11    **False Advertising - California Business and Professions Code § 17500, et seq.**

12    (Plaintiffs on behalf of themselves and the Class Against All Defendants including

13    DOES 1 through 10)

14    138.    Plaintiffs reallege all allegations as if fully set forth herein, and

15    incorporate previous allegations by reference.

16    139.    All claims brought under this Fourth Claim for Relief that refer or

17    relate to the false, untrue, fraudulent or misleading endless chain of Defendants are

18    brought on behalf of Plaintiffs and the Class.

19    140.    All claims brought under this Fourth Cause of Action that refer or

20    relate to the false, untrue, fraudulent or misleading statements of income are brought

21    on behalf of Plaintiffs.

22    141.    All claims brought under this Fourth Claim for Relief that refer or

23    relate to the false, untrue, fraudulent or misleading statements of income are brought

24    on behalf of Plaintiffs and the Class.

25    142.    Defendants' business acts, false advertisements and materially

26    misleading omissions constitute false advertising, in violation of the California

27    Business and Professions Code § 17500, *et seq*.

28

143.   Defendants engaged in false, unfair and misleading business practices, consisting of false advertising and materially misleading omissions regarding the purported "business opportunity," likely to deceive the public and include, but are not limited to, the items set forth above. MarketAmerica knew, or should have known, that the representations about the business opportunity of MarketAmerica were misleading in nature.

144.   Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which they were not entitled. The Court should order Defendants to disgorge, for the benefit of Plaintiff and all other MarketAmerica Distributors in the class who signed an agreement with MarketAmerica governed by California law their profits and compensation and/or make restitution to Plaintiff and the Class.

145.   Under California Business and Professions Code Section 17535, Plaintiffs and the class seek a judicial order directing Defendants to cease and desist all false advertising related to the Defendants' illegal endless chain scheme, and such other injunctive relief as the Court finds just and appropriate.

146.   Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which they were not entitled. The Court should order Defendants to disgorge, for the benefit of Plaintiff and all other MarketAmerica Distributors in the class who signed a Distributor Agreement with MarketAmerica their profits and compensation and/or make restitution to Plaintiff and the class.

147.   Under California Business and Professions Code Section 17535, Plaintiff and the class seek a judicial order directing Defendants to cease and desist from all false advertising related to the Defendants' illegal scheme, and such other injunctive relief as the Court finds just and appropriate.

///

///

# FIFTH CLAIM FOR RELIEF

## (RICO 18 U.S.C. § 1962(a))

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 10)

148.   Plaintiff realleges all allegations as if fully set forth herein, and incorporate previous allegations by reference.

149.   MarketAmerica, the Individual Defendants, and those in conspiracy, willfully and intentionally violated and continue to violate RICO and California law with the goal of obtaining money, directly and indirectly, through a pattern of racketeering activities in violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § 1962(a), and California Penal Code § 327.

149.   Each of the Defendants are engaged in activities of federal interstate and foreign commerce and are entities capable of holding a legal or beneficial interest in property.  All Defendants are "persons," as that term is defined by 18 U.S.C. § 1961(3).

150.   The Defendants (with the individual defendants) together make up the "MarketAmerica Enterprise" as an association of entities and individuals associated in fact to operate an illegal pyramid scheme.  The MarketAmerica Enterprise is not a legal entity within the meaning of "enterprise" as defined in 18 U.S.C. § 1961(4). The Defendants have been members of the MarketAmerica Enterprise from at least 1992, and continuing until the present. MarketAmerica and the Individual Defendants are separate entities from the MarketAmerica Enterprise and play separate and distinct roles in the operation of the MarketAmerica Enterprise.

      a. MarketAmerica is creator, architect, and beneficiary of the MarketAmerica Pyramid. Through interstate wire and mails, it coordinates the MarketAmerica Enterprise, a worldwide scheme. It also pays and awards the commissions, bonuses, and other incentives to the Defendants and others through online.

      b.  All members of the pyramid scheme (whether located in the U.S. or abroad) were signed up electronically in the United States.

      c.  MarketAmerica employs the Defendants to coordinate operations of the MarketAmerica Pyramid in the countries in which MarketAmerica operates, including determining and coordinating points, bonuses, and other incentives.

      d.  MarketAmerica employs the other defendants as its operational arm of the MarketAmerica Enterprise to conduct racketeering activities in the U.S.

      e.  MarketAmerica employs the remainder of the Defendants to induce new recruits into the MarketAmerica' Pyramid, to induce Distributors to purchase MarketAmerica' product, and to induce Distributors to recruit additional Distributors into the MarketAmerica Pyramid. The Remaining Defendants also have an agreement with MarketAmerica mandating that MarketAmerica will not reform its fraudulent marketing plan without their consent.

151.  From at least April 2009 and continuing until the present, within the County of Los Angeles, and elsewhere, MarketAmerica in association with the other defendants, did knowingly, willfully and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of the MarketAmerica Enterprise through a pattern of racketeering activity.

152.  From at least April 2009 and continuing until the present, MarketAmerica with each other and the remaining defendants, executed a *per se* scheme to defraud through a pattern of racketeering made up of distinct acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. The MarketAmerica Enterprise engaged in and affected interstate and foreign trade. The MarketAmerica Enterprise transacts business through the instrumentalities of interstate commerce such as telephones, facsimile machines, the internet, email, and the United States mail and

1  interstate commercial carrier to communicate in furtherance of the activities of the
2  MarketAmerica Enterprise.

3      153.   The MarketAmerica Enterprise advertises, markets, and sells products
4  and services throughout the United States.  The operation of the enterprise continued
5  over several years, including activities in every state, and has affected and damaged,
6  and continues to afect and damage, commercial activity.

7      154.   To further the goals of the MarketAmerica Enterprise, which were to
8  (1) earn money through fraudulent means, (2) entice individuals to become
9  MarketAmerica Distributors, (3) entice individuals to purchase products from
10 MarketAmerica, (4) entice individuals to recruit others to become MarketAmerica
11 Distributors and profit off those recruits' purchases of MarketAmerica' travel
12 packages, (5) reap large profits for themselves based on false representations,
13 MarketAmerica and the remaining defendants engaged in various forms of illegal
14 activity, including (a) mail fraud, (b) wire fraud, and (c) conspiracy.

15     155.   The pattern of racketeering activity alleged is distinct from the
16 MarketAmerica Enterprise. Each act of racketeering activity is distinct from the
17 MarketAmerica Enterprise in that each is a separate offense committed by an entity
18 or individual while the MarketAmerica Enterprise is an association of entities and
19 individuals. The MarketAmerica Enterprise has an ongoing structure and/or
20 organization supported by personnel and/or associates with continuing functions or
21 duties.

22     156.   The racketeering acts set out above and below, and others, all had the
23 same pattern and similar purpose of defrauding Plaintiff and the class for the benefit
24 of the MarketAmerica Enterprise and its members. Each racketeering act was
25 related, had a similar purpose, involved the same or similar participants and methods
26 of commission and had similar results affecting Plaintiff and the class. The
27 racketeering acts of mail and wire fraud were also related to each other in that they
28 were part of the MarketAmerica Enterprises' goal to fraudulently induce Plaintiff

1   and the Class to join the illegal scheme, purchase products, and recruit others to join

2   the scheme.

3          157.   MarketAmerica and other Defendants' wrongful conduct has been and

4   remains part of MarketAmerica Enterprises' ongoing way of doing business and

5   constitutes a continuing threat to the property of Plaintiff and the class. Without the

6   repeated acts of mail and wire fraud, the MarketAmerica Enterprise's fraudulent

7   scheme would not have succeeded.

8          158.   Revenue gained from the pattern of racketeering activity, which

9   constitutes a significant portion of the total income of MarketAmerica and the

10  Individual Defendants, was reinvested in the operations of the MarketAmerica

11  Enterprise for the following purposes: (a) to expand the operations of the

12  MarketAmerica Enterprise through additional false and misleading advertising and

13  promotional materials aimed at recruiting new Distributors; (b) to facilitate the

14  execution of the illegal scheme; and (c) to convince current Distributors to recruit

15  new Distributors, and purchase MarketAmerica's products.

16         159.   Plaintiffs and the class were injured by the reinvestment of the

17  racketeering income into the MarketAmerica Enterprise because they invested

18  billions of dollars of their own money through their purchasing of products,

19  promotional materials, and MarketAmerica products, all of which were packaged

20  and shipped at inflated charges.

21         160.   In connection with promoting and executing their illegal scheme,

22  members of the MarketAmerica's Enterprise knowingly and recklessly placed and

23  caused to be placed in the United States mail or by interstate commercial carrier, or

24  took or received therefrom, matters or things to be sent to or delivered by the United

25  States mail or by interstate commercial carrier comprising, among other things

26  product, invoices, letters, promotional materials, brochures, products and checks to

27  Plaintiff and the class and received communications between and among themselves

28  through the United States mail, in all fifty states and the District of Columbia. It was

1    reasonably foreseeable that these mailings or receipts would take place in

2    furtherance of the fraudulent scheme.

3        161.   In connection with promoting and executing their illegal scheme,

4    members of the MarketAmerica's Enterprise engaged in wire fraud, in violation of

5    18 U.S.C. § 1343, by, among other things, knowingly and recklessly transmitting or

6    causing to be transmitted with wire communications, in interstate and foreign trade,

7    materials promoting the illegal MarketAmerica Pyramid on internet web sites, radio,

8    satellite radio, television, email, facsimile, telephone, and text messages, including

9    promotional materials, registration information, product information, and invoices.

10   MarketAmerica and Individual Defendants maintain websites on the internet where

11   the enterprise was perpetrated.

12       162.   MarketAmerica's Distributors can and do buy products and are given

13   inducements to continue working as Distributors within the MarketAmerica

14   Pyramid. MarketAmerica maintains various websites that host promotional videos

15   featuring the Individual Defendants promoting the unlawful scheme and other

16   marketing materials featuring the Individual Defendants promoting the illegal

17   scheme. MarketAmerica sent and received these interstate wire communications to

18   and from all fifty states and the District of Columbia.

19       163.   Each Defendant has promoted the MarketAmerica Pyramid and

20   MarketAmerica Enterprise. Each use of the mail or wire by Defendants and the

21   Individual Defendants done in furtherance of the MarketAmerica pyramid is an act

22   of racketeering.

23       164.   The pattern of racketeering activity through which the affairs of the

24   MarketAmerica Enterprise were conducted and in which MarketAmerica and the

25   Individual Defendants participated consisted of the following:

26                        **Racketeering Act Number One**

27       165.   Plaintiffs received, through private commercial interstate carrier and

28   the internet portal maintained by MarketAmerica, certain application materials,

which promoted the MarketAmerica Enterprise and contained material false representations regarding the success Distributors could achieve through MarketAmerica by purchasing products and recruiting others to do the same.

166.   Because of her receipt of these materials, Plaintiffs signed up with MarketAmerica purchased MarketAmerica products, and recruited others to do the same. The materials and package items were sent to Plaintiffs with the purpose and intent of promoting the MarketAmerica Enterprise's illegal scheme, all in violation of 18 U.S.C. § 1341.

### Racketeering Act Number Two

167.   Plaintiffs received, through private commercial interstate carrier, and the internet portal maintained by the Defendants, income disclosures, which promoted the MarketAmerica Enterprise and the MarketAmerica pyramid through the sales and marketing plan, and which contained material false representations regarding the success that Distributors could achieve through MarketAmerica by purchasing travel packages and recruiting others to do the same.

168.   Because of their receipt of the representations, Plaintiffs signed up with MarketAmerica, purchased MarketAmerica travel package, and recruited others to do the same.  The income disclosure statements with the purpose and intent of promoting the MarketAmerica Enterprise's illegal scheme, all in violation of 18 U.S.C. § 1341.

### Racketeering Act Number Three

169.   Plaintiffs ordered, through interstate wire transmissions over the internet product packages, which were promoted by the MarketAmerica Enterprise as the means by which Distributors such as Yang could pay for their position and get greater retail profits. MarketAmerica hosted these websites. Yang paid MarketAmerica for these products using an electronic transfer of funds. MarketAmerica shipped Yang these products through private commercial interstate carrier. MarketAmerica coordinated through interstate wires on at least a monthly

basis following the order the collection and accruing of the rewards associated with those purchases. Because of the promised rewards, points, commissions, and opportunity to advance up the MarketAmerica Pyramid, Plaintiff Yang purchased MarketAmerica Products, paid for those MarketAmerica travel packages, and received those products, using instrumentalities of interstate commerce. Defendants' actions violated 18 U.S.C. §§ 1341 and 1343.

### Racketeering Act Number Four

170.   Throughout April of 2009 and continuing through today, MarketAmerica distributed information by interstate wire transmissions over the internet, such as www.MarketAmerica.com and Shop.com. The MarketAmerica websites promoted the fraudulent scheme through videos of Individual Defendants containing material false representations regarding the business opportunity available to Distributors, and the wealth that a distributor could get by agreeing to become an MarketAmerica distributor.  Plaintiffs became MarketAmerica distributors and maintained their position as MarketAmerica distributors and continued to order MarketAmerica products and recruit others to do the same. This conduct violated 18 U.S.C. § 1343.

### Racketeering Act Number Five

171.   Throughout 2016, the members distributed information by interstate wire transmissions over the internet promoting MarketAmerica as described in this Complaint. These videos promoted the fraudulent pyramid scheme and contained material false representations regarding the wealth that a recruit or MarketAmerica distributor could achieve if that recruit became an MarketAmerica distributor and if a distributor purchased MarketAmerica products. This violated 18 U.S.C. § 1343.

172.   MarketAmerica and the Individual Defendants' representations and omissions were the proximate cause of Plaintiffs, and the class, joining the fraudulent scheme and purchasing the products.

173.   To the extent proof of reliance is legally required, in engaging in the

1  aforementioned wire and mail fraud, MarketAmerica and the Individual Defendants

2  knew that Plaintiffs and the class would reasonably rely on their representations and

3  omissions, which would cause the Plaintiffs and the class joining the fraudulent

4  pyramid scheme and purchasing the products.

5        174.   Defendants and the Individual Defendants knew that the

6  misrepresentations and omissions described above in promoting and executing the

7  fraudulent scheme were material because they caused Plaintiffs and the class to join

8  and participate in the illegal scheme.

9        175.   Had Plaintiffs and the class known that MarketAmerica and the

10  Individual Defendants were promoting an illegal scheme, they would not have

11  joined the MarketAmerica' pyramid scheme.

12        176.   MarketAmerica's and the Individual Defendants' acts of mail and wire

13  fraud were a proximate cause of the injuries that Yang and the class suffered.

14  Because of MarketAmerica and the Individual Defendants' pattern of unlawful

15  conduct, Plaintiffs and the class lost hundreds of millions of dollars, if not billions of

16  dollars.

17        177.   Under 18 U.S.C. § 1964, Plaintiffs and the class are entitled to treble

18  their damages, plus interest, costs and attorney's fees.

19                        **SIXTH CLAIM FOR RELIEF**

20                        **RICO 18 U.S.C. § 1962(c)**

21  (Plaintiffs on behalf of themselves and the Class Against All Defendants, including

22                        DOES 1 through 10)

23        178.   Plaintiffs reallege all allegations as if fully set forth herein, and

24  incorporate previous allegations by reference.

25        179.   MarketAmerica and the Individual Defendants are associated with the

26  MarketAmerica Enterprise.  In violation of 18 U.S.C. § 1962(c), MarketAmerica

27  and the Individual Defendants conducted and/or participated in the conduct of the

28  affairs of the MarketAmerica Enterprise, including participation in activities in

1    furtherance of the MarketAmerica Defendants' fraudulent scheme, through the

2    pattern of racketeering activity earlier alleged.

3        180.   As a direct and proximate result of MarketAmerica and the Individual

4    Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs and the class were induced

5    to, and did, become Distributors in the MarketAmerica Pyramid scheme and

6    purchased hundreds of millions of dollars, if not billions of dollars of the

7    MarketAmerica products and recruited others to do the same.  Plaintiffs and the

8    class were injured by MarketAmerica's and the Individual Defendants' unlawful

9    conduct.  The funds used to buy MarketAmerica products constitute property of

10   Plaintiffs and the class within the meaning of 18 U.S.C. § 1964(c).

11       181.   Under 18 U.S.C. § 1964(c), Yang and the class are entitled to treble

12   their damages, plus interest, costs and attorney's fees.

13                    **SEVENTH CLAIM FOR RELIEF**

14                    (**RICO 18 U.S.C. § 1962(d)**)

15   (Plaintiffs on behalf of themselves and the Class Against All Defendants including

16                    DOES 1 through 10)

17       182.   Plaintiffs reallege all allegations as if fully set forth herein, and

18   incorporate previous allegations by reference.

19       183.   MarketAmerica and the Individual Defendants agreed to work together

20   in a symbiotic relationship to carry on the illegal scheme. Under that agreement,

21   MarketAmerica, all named defendants, and those named as DOE defendants, and

22   others conspired to violate 18 U.S.C. § 1962(a) and (c), in violation of 18 U.S.C. §

23   1962(d).

24       184.   As a direct and proximate result of MarketAmerica's and the Individual

25   Defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs and the class were injured

26   by MarketAmerica's and the Individual Defendants' unlawful conduct. The funds

27   used to buy MarketAmerica products constitute property of Yang and the class

28   under 18 U.S.C. § 1964(c).

185.   Under 18 U.S.C. § 1964(c), Plaintiffs and the class are entitled to treble their damages, plus interest, costs and attorney's fees.

## EIGHTH CLAIM FOR RELIEF

### (Federal Securities Fraud)

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 10)

186.   Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

187.   In the alternative to Counts Five, Six, and Seven, and without prejudice to their position that Counts Five, Six and Seven are not preempted by the PSLRA, Plaintiffs in Count Eight alleges violations of the securities laws.

188.   Only to the extent Defendants contend that Plaintiffs' purchases of starter kits,  payment of monthly and annual fees, and purchases of MarketAmerica products constitute investments in unregistered securities (the sale of which would be a past and continuing violation of federal securities laws), and only if Defendants are successful in obtaining a dismissal for judgment against Plaintiffs' RICO claims on the grounds that the PSLRA preempts their RICO claims, Plaintiffs contend that their purchases of starter kits, payment of monthly fee, and purchases of MarketAmerica products constitute investments in securities.

189.    MarketAmerica made numerous material omissions in its Policies regarding retail sales. MarketAmerica represented that retail sales were a significant part of Defendants' revenues.

190.   These statements are misleading because they fail to inform Distributors that "retail sales," particularly as defined in the Policies, are not a true viable way of earning income because Distributors are extremely unlikely to make significant "retail sales" and because the only realistic way to make money in the MarketAmerica scheme is through recruiting.

191.   MarketAmerica made material omissions in its Policies regarding

Distributors' ability to earn money.  In the Policies, MarketAmerica informed its Distributors that they do not even need to be good at sales, and they can still earn money.

192.   This statement is misleading because it fails to inform Distributors that very few Distributors are likely to earn any profit from participating in MarketAmerica, regardless of how much work they put in and regardless of what part of the country they live in.

193.   By making affirmative statements regarding retail sales and the ability of Distributors to earn income, MarketAmerica undertook an affirmative obligation to make the disclosures necessary to make such statements not misleading.

194.   MarketAmerica made the then-current version of the Policies available to Plaintiffs and the Class Members through MarketAmerica's website at all times. MarketAmerica contractually requested Plaintiffs and the Class Members to acknowledge that they had read and reviewed the current version of the Policies at the time they joined MarketAmerica, to abide by the terms of the current version of the Policies, and to read, understand, and adhere to the current version of the Policies.

195.   MarketAmerica made these omissions knowing that doing so was false and misleading.  MarketAmerica benefitted in a concrete and substantial way from the operation of the pyramid scheme, the recruitment of new Distributors, and new Distributors' reliance on MarketAmerica's omissions.

196.   MarketAmerica made these omissions with the specific intent that Distributors rely on them.

197.   Plaintiffs' and the Class Members' reliance on the omissions may be presumed.

## PRAYER FOR RELIEF

The named Plaintiffs and the Plaintiffs' class and subclasses request the following relief:

a.       Certification of the class and subclasses;

b.       A jury trial and judgment against Defendants;

c.       Rescission of the agreements upon which the scheme is based, and recovery of all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme;

d.       Damages for the financial losses incurred by Plaintiff and by the class and subclasses because of the MarketAmerica and the Individual Defendants' conduct and for injury to their business and property;

e.       Restitution and disgorgement of monies;

f.       Temporary and permanent injunctive relief enjoining MarketAmerica from paying its Distributors recruiting rewards that are unrelated to retail sales to ultimate users and from further unfair, unlawful, fraudulent and/or deceptive acts;

g.       The cost of suit including reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, Civil Code §1689.2, and otherwise by law;

h.       For damages in an amount yet to be ascertained as allowed by law; and

i.       For such other damages, relief and pre- and post-judgment interest as the Court may deem just and proper.

[Signature Page To Follow]

1

2  Dated:  May 29, 2017          By: _____

3

4                          **LINDEMANN LAW FIRM, APC**
                           BLAKE J. LINDEMANN, SBN 255747
5                          433 N. Camden Drive, 4th Floor
                           Beverly Hills, CA 90210
6                          Telephone:  (310)-279-5269
                           Facsimile:   (310)-300-0267
                           E-mail:      blake@lawbl.com

7                          -and-

8
                           DAREN M. SCHLECTER, SBN 259537
9                          **LAW OFFICES OF DAREN M. SCHLECTER,**
                           **APC**
10                         1925 Century Park East, Suite 830
                           Los Angeles, CA 90067
11                         Telephone:  (310)-553-5747

12
                           Attorneys For Plaintiffs
13                         CHUANJIE YANG, OLLIE LAN, AND ALL
                           THOSE SIMILARLY SITUATED
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL COMPLAINT – CLASS ACTION

1    **<u>DEMAND FOR JURY TRIAL</u>**

2        Plaintiffs Chuanjie Yang, Ollie Lan, on behalf of themselves and those

3    similarly situated, hereby request a jury trial on all matters so triable.

4

5    Dated:  May 29, 2107      By: _____

6                        **LINDEMANN LAW FIRM, APC**

7                        BLAKE J. LINDEMANN, SBN 255747
                    433 N. Camden Drive, 4th Floor

8                        Beverly Hills, CA 90210
                    Telephone:  (310)-279-5269

9                        Facsimile:  (310)-300-0267
                    E-mail:      blake@lawbl.com

10                       -and-

11

12                       DAREN M. SCHLECTER, SBN 259537
                    **LAW OFFICES OF DAREN M. SCHLECTER,**

13                       **APC**
                    1925 Century Park East, Suite 830

14                       Los Angeles, CA 90067

15                       Telephone:  (310)-553-5747

16                       Attorneys For Plaintiffs

17                       CHUANJIE YANG, OLLIE LAN, AND ALL
                    THOSE SIMILARLY SITUATED

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL COMPLAINT – CLASS ACTION               46